David Alan Makman SBN 178195
LAW OFFICES OF DAVID A. MAKMAN
483 Seaport Court, Suite 103
Redwood City, CA 94063
david@makmanlaw.com

Attorney for Defendant and
Counterclaim Plaintiff
Tasty Work, LLC.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| ADVANCE MAGAZINE PUBLISHERS INC. d/b/a CONDÉ NAST, a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>TASTY WORK, LLC, a California limited liability company,<br><br>Defendant.<br><br>TASTY WORK, LLC, a California limited liability company<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>ADVANCE MAGAZINE PUBLISHERS INC. d/b/a Condé Nast, a New York corporation,<br><br>Counterclaim Defendant. | Case No. 2:25-cv-11579-AB-SSC<br><br>**ANSWER AND COUNTERCLAIM**<br><br>Complaint Served: January 7, 2026<br>Original Response Date: March 9, 202<br>New Response Date: April 8, 2026<br><br>JURY TRIAL DEMANDED |

1

Defendant and Counterclaim Plaintiff Tasty Work, LLC ("Tasty Work", "Defendant", or "Counterclaim Plaintiff") responds to the Complaint of Plaintiff Advance Magazine Publishers, Inc. d/b/a Condé Nast ("Condé Nast", "Plaintiff" or "Counterclaim Defendant") as follows:

1. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations provided in the first sentence of Paragraph 1 of Plaintiff's Complaint and, therefore, denies. The remainder of Paragraph 1 of the Complaint is argumentative and improper, and no response is required, but to the extent that a response might be required, Defendant denies the remaining allegations of Paragraph 1.

2. Paragraph 2 of the Complaint is argumentative and improper, and no response is required, but to the extent that a response might be required, Defendant denies the allegations of Paragraph 2.

3. Paragraph 3 of the Complaint is argumentative and improper, and no response is required, but to the extent that a response might be required, Defendant denies the remaining allegations of Paragraph 3.

**JURISDICTION AND VENUE**

4. Admitted that jurisdiction is proper over the federal claims, and that supplemental jurisdiction would be appropriate to any California state law claims

Answer and Counterclaims

that are not preempted. Denied to the extent that any California state law claims are preempted.

5. Admitted that venue is proper.

**THE PARTIES**

6. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations provided in Paragraph 6 of Plaintiff's Complaint and, therefore, denies.

7. Admitted.

**FACTUAL BACKGROUND**

8. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations provided in Paragraph 8 of Plaintiff's Complaint and, therefore, denies.

9. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations provided in Paragraph 9 of Plaintiff's Complaint and, therefore, denies.

10. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations provided in Paragraph 10 of Plaintiff's Complaint and, therefore, denies.

11.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations provided in Paragraph 11 of Plaintiff's Complaint and, therefore, denies.

12.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations provided in Paragraph 12 of Plaintiff's Complaint and, therefore, denies.

13.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations provided in Paragraph 13 of Plaintiff's Complaint and, therefore, denies.

14.     Admitted that Condé Nast uses a particular stylized font for its Vogue magazine. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations provided in Paragraph 14 of Plaintiff's Complaint and, therefore, denies.

15.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations provided in Paragraph 15 of Plaintiff's Complaint and, therefore, denies.

16.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations provided in Paragraph 16 of Plaintiff's Complaint and, therefore, denies.

Answer and Counterclaims

17.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations provided in Paragraph 17 of Plaintiff's Complaint and, therefore, denies.

18.      Admitted.

19.      Admitted.

20.      Admitted.

21.      Admitted.

22.      Denied.

23.      Denied as argumentative.

24.      Denied as argumentative.

25.      Denied as argumentative.

26.      Admitted.

27.      Admitted that Plaintiff filed an opposition, following the United States Patent Office's examination and approval of the DOGUE mark, but denied that there is any likelihood of confusion or of dilution. Note that the proceeding at the TTAB is apparently still considering Plaintiff's request to stay the opposition.

28.      Admitted that Condé Nast sent a letter on or around October 2025, and that Tasty Work responded. The letters speak for themselves.

29.      Denied.

Answer and Counterclaims

## FIRST CAUSE OF ACTION
### (Trademark Infringement of 15 U.S.C. §§ 1114)

30.     Tasty Work repeats and re-alleges each and every allegation of Paragraphs 1 through 29, above, as though fully set forth here.

31.     This allegation is vague and ambiguous and is denied on those grounds.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Denied.

38.     Denied.

39.     Denied.


## SECOND CAUSE OF ACTION
### (False Designation of Origin and Association, 15 U.S.C. § 1125(a))

40.     Tasty Work repeats and re-alleges each and every allegation of Paragraphs 1 through 39, above, as though fully set forth here.

41.     Denied.

42.     Denied.

43.     Denied.

Answer and Counterclaims

44.     Denied.

45.     Denied.

46.     Denied.

47.     Denied.

## THIRD CAUSE OF ACTION
### (Trademark Dilution, 15 U.S.C. § 1125(c))

48.     Tasty Work repeats and re-alleges each and every allegation of Paragraphs 1 through 47, above, as though fully set forth here.

49.     Admitted that Condé Nast has used the VOGUE mark for years. The remainder of this paragraph is denied as argumentative and irrelevant.

50.     Denied on the grounds that this calls for a legal conclusion.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

Answer and Counterclaims

## FOURTH CAUSE OF ACTION
### (Common Law Trademark Infringement)

57. Tasty Work repeats and re-alleges each and every allegation of Paragraphs 1 through 56, above, as though fully set forth here.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

## FIFTH CAUSE OF ACTION
### (Unfair Competition, § 17200)

64. Tasty Work repeats and re-alleges each and every allegation of Paragraphs 1 through 63, above, as though fully set forth here.

65. Denied.

66. Denied.

## SIXTH CAUSE OF ACTION
### (Common Law Unfair Competition)

67. Tasty Work repeats and re-alleges each and every allegation of Paragraphs 1 through 66, above, as though fully set forth here.

68. Plaintiff is without sufficient information to admit or deny and, therefore, denies.

Answer and Counterclaims

69.    Denied.

70.    Denied.

71.    Denied.

72.    Denied.

73.    Denied.

74.    Denied

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

75.    The Complaint, and each and every cause of action alleged therein, fails to state facts sufficient to constitute a cause of action against Defendant upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Unclean Hands)

76.    Condé Nast is barred from recovery in this action due to its own inequitable conduct and unclean hands, including, but not limited to, its willful and deliberate decision to copy Tasty Work's idea and create a Condé Nast "Dogue" campaign in order to benefit from the good will associated with Tasty Work's established and senior DOGUE mark.

Answer and Counterclaims

## THIRD AFFIRMATIVE DEFENSE
### (Free Speech)

77.    Condé Nast is barred from any monetary or equitable recovery in this action by the freedom of speech provisions of the First Amendment of the United States Constitution and Article 1, Section 2(a) of the Constitution of the State of California.

## FOURTH AFFIRMATIVE DEFENSE
### (Laches and Estoppel)

78.    Condé Nast is barred from recovery in this action by the doctrines of laches and estoppel. Tasty Work has used the DOGUE mark openly, continuously, and in public commerce for approximately five years prior to any objection by Condé Nast, during which time Condé Nast knew, or should have known, of such use and unreasonably delayed in asserting any alleged rights.

## FIFTH AFFIRMATIVE DEFENSE
### (Failure to Police Mark)

79.    On information and belief, discovery will show that Condé Nast co-exists with numerous other companies that use the terms VOGUE, DOGUE, ROGUE, and the like, and is not entitled to recovery under a dilution theory here because it has not sufficiently policed its VOGUE mark against dilution to allow such recovery.

## SIXTH AFFIRMATIVE DEFENSE
### (Not Identical)

80.     Condé Nast is not entitled to assert dilution against Tasty Work's DOGUE because it has not registered any "Dogue" mark in USPTO, and because Tasty Work is the senior user of the mark DOGUE, which is not identical to Condé Nast's registered VOGUE mark.

## SEVENTH AFFIRMATIVE DEFENSE
### (Conceptually Weak and Descriptive Mark)

81.     The term "Vogue" is descriptive and conceptually weak in the area of fashion because the word "Vogue" means "in style". Therefore, Condé Nast is not entitled to assert dilution against Tasty Work's DOGUE mark, which is used for a dog fashion magazine and is clearly different from Condé Nast's Vogue branding.

## EIGHTH AFFIRMATIVE DEFENSE
### (No Likelihood of Confusion)

82.     There are many reasons that consumers are unlikely to confuse Tasty Work's DOGUE mark with Condé Nast's VOGUE mark, including, but not limited to, the following. "Dogue" is not the same word as "Vogue", and has an independent meaning as the French word for "French Mastiff", and as a word that sounds like "dog." Tasty Work's DOGUE magazine features dogs, while Condé Nast's Vogue Magazine features humans. Tasty Work's DOGUE logo is distinct and does not use the famous Vogue typeface. Tasty Work's DOGUE magazine is a

community-backed-project, supported by a loyal fanbase and following, with most of the customers official Coverdogs club-members, Patreons and sponsors of the magazine, that are personally known to Tasty Work's owner, Olga Portnaya. Tasty Work's DOGUE magazine is clearly branded with "Coverdogs" because it is a part of the Coverdogs project. DOGUE magazine has a distinctive interior design, with a consistent design layout, which always starts with a personalized 2 page "Letter from the Editor" with Olga Portnaya's photographs and "OP" initials. The digital version of DOGUE magazine is available for free on Tasty Work's websites, and the print magazine is sold online at thedoguemagazine.com and coverdogs.com, not on Condé Nast's vogue.com. Tasty Work's Coverdogs and DOGUE magazine often feature additional dog magazine parody covers, such as, but not limited to, Barker's Bazbark (Haute Couture Section), National Pawgraphic (Travel Section), and Spawrts Illustrated (Sports Section). Condé Nast's VOGUE print magazine costs around $10.00, per issue, while Tasty Work's DOGUE print magazine costs around $30.00, per issue. Tasty work also offers custom versions of the DOGUE magazine, with client's custom "DOGUE" cover on the front, a service that is not available from Condé Nast's Vogue. Tasty Work's DOGUE magazine uses print-on-demand services and is seasonal, and because of this, does not offer subscriptions, which is not the way that Condé Nast operates.

Answer and Counterclaims

## COUNTERCLAIMS

83.    Since at least 2019, Tasty Work has pioneered a distinct form of media: dog-centered fashion editorial parody. Through its Coverdogs platform and related publications, Tasty Work established a recognizable niche combining humor, animal imagery, and fashion commentary.

84.    Tasty Work did not create DOGUE to imitate Vogue or to win over Condé Nast's Vogue customers. Tasty Work's goal was to transform fashion itself — to reimagine fashion through a humorous canine lens. Tasty Work's DOGUE was the first publication to occupy what can fairly be described as the "dog-fashion editorial" category. Only recently, Condé Nast seems to have decided to try and take over the space by creating a new dog vertical called "Dogue" and launching copycat "Dogue" campaigns and trying to flood the channels to overwhelm Tasty Work's presence in this niche market. Trademark law does not permit a latecomer, even a famous one, to claim exclusive control over a brand it did not create as Condé Nast seeks to do here.

85.    Tasty Work launched the DOGUE Magazine on Instagram in 2019 and has been continuously "Pupblishing" under the DOGUE mark ever since. Through consistent and original content creation, collaborations and dog-community focused initiatives, including grassroots partnerships and animal welfare efforts, Tasty Work has built a substantial and loyal following, through

hard work, and established significant public recognition of the DOGUE brand. To date, Tasty Work has 25 printed issues of DOGUE (around 2400 pages of original dog fashion editorial content) and around 3000 digital DOGUE covers, published on Coverdogs. Tasty Work also has the Coverdogs App (which has registered trademark Serial #98618036). The mobile app, published in 2022, available on iOS and Android, allows people to create their own digital DOGUE covers and share them on Instagram.

86.     The original Instagram account that was used by Tasty Work is called @coverdogs. On that account, Tasty Work does many things, including publishing dog parody magazine covers, including, but not limited to, in its DOGUE digital and print magazines. Tasty Work spoofs modern fashion culture, popular culture and popular magazines by re-casting them in a dog-friendly way–making dogs the stars, instead of people.

87.     Through the diligent efforts of the owner, Olga Portnaya, the Coverdogs Instagram account has grown in popularity over time, and now has more than 27,000 followers, with monthly reach exceeding 200,000 views. The DOGUE Magazine Instagram account has over 19,000 followers and monthly reach exceeding 250,000 views. Tasty Work has two DOGUE trademark applications with the USPTO. The logo application (Serial #97624867) was filed

in 2022, approved, and published for opposition in 2025. The word application (Serial #99352049) is pending.

88.     DOGUE magazine was aimed at millennial dog parents on Instagram with dedicated dog accounts. Tasty Work's competitions, for example, are explicitly limited to dogs with a dedicated Instagram account. As the world's first dog fashion magazine that specializes in dog fashion editorials, the mission of DOGUE magazine is to become the "authoritative bark" in dog's fashion and beauty. Through the lens of dogs, the magazine provides commentary on modern fashion trends, modern standards of beauty, style, and popular culture.

89.     As a fashion parody it is appropriate to the humorous message that Tasty Work reference to and evoke famous fashion brands to poke fun at them. Tasty Work has the right to do this under the First Amendment of the United States Constitution and also under Article 1, Section 2(a) of the Constitution of the State of California, which, arguably, provides even stronger affirmative free speech protections than the United States Constitution.

90.     Over the years, the magazine has spoofed numerous famous brands in print and online. Sometimes words are changed to associate them with dogs, as when the print magazine included an article titled "From Hollywood to Hollywoof" or as when the website talks about "Pupblishing". Or when DOGUE

released seasonal fashion editorials such as "Fursace", "Sniffany", and "Pawlentino."

91.    Tasty Work's website, thedoguemagazine.com, has a copyright notice indicating that it is owned by Tasty Work. The site now includes a clear disclaimer on its FAQ page, which is located on the Homepage footer, stating that "DOGUE is an independent publication, not affiliated with, endorsed by, or otherwise connected to Vogue or Condé Nast." Moreover, all of Tasty Work's products (including DOGUE magazines) are sold through the main Coverdogs Shop Website. The website has links to the Coverdogs Patreon and GoFundMe accounts, and there is nothing about it that suggests that it is associated with Condé Nast or Advance Magazine Publishers, Inc.

92.    The DOGUE logo on thedoguemagazine.com uses a unique font that was designed by the owner of Tasty Work, Olga Portnaya. The DOGUE font is bold, round and thick and looks like a cheerleader font, and in a way that, perhaps, evokes a French Mastiff. Olga's childhood dog was a French Mastiff, and one of the reasons she chose to name her magazine DOGUE, because "Dogue" is the French word for that kind of dog. In contrast, the famous "Vogue" logo used by Condé Nast has a different, distinctive font. The "Vogue" font is lighter, thinner, and more elongated in a way that is perhaps intended to evoke the light, thin, elongated women that are so often shown photographed therein.

93.     In 2022, Tasty Work released an app called "Coverdogs" that allows users to create mock dog-themed or dog versions of famous magazine covers using photographs of their dogs. Coverdogs has a registered trademark. It's a specialized photo editor that places a dog's photo into templates for parody magazines like DOGUE, Barker's Bazbark, Spawrts Illustrated, and National Pawgraphic. Hundreds of parody magazine covers have been created and posted to social media, since the creation of this application. Tasty Work's app helped popularize "DOGUE" dog fashion covers and, as their popularity increased, people began to copy this idea. Today, many artists online (Etsy, for example) offer personalized "Dogue" artworks such as parody "Dogue" posters, and framed "Dogue" portraits, using the generic "Dogue" logo in the font of Vogue.

94.     Around that time, customers began to ask for a "DOGUE" magazine in print and Tasty Work decided to oblige. The company created a print magazine in 2021, with the first issue launched in September, entitled "The Rise of Coverdogs". DOGUE magazine is produced via print-on-demand services, made available worldwide through Instagram and online at thedoguemagazine.com and cover-dogs.com, with limited copies of the magazine sold at a single, local newsstand in Los Angeles. Tasty Work's digital DOGUE magazine is free online, and its printed DOGUE magazine sells for around 3 times the price of Condé

Answer and Counterclaims

Nast's Vogue Magazine, which is another reason that customers are unlikely to be confused and buy DOGUE Magazine when they really want Vogue Magazine.

95.    Over time, the number of sites that were copying Tasty Work's DOGUE theme began to increase. Numerous "Dogue" parody magazine covers have been published on the Internet by other artists. Multiple Instagram accounts were creating fake Dogue magazine pages, pretending to be the DOGUE magazine, selling edits, features and even ads in the magazine and, thereby, trying to profit from DOGUE Magazine's increasing popularity on social media. In order to protect its intellectual property from such incursions, Tasty Work filed a trademark application on or around October 9, 2022.

96.    On information and belief, discovery will show that, in 2022, when Tasty Work filed for trademark protection, Condé Nast had not conceived of using the term "Dogue" in its publications or marketing and had no plans to create any dog-based brand extension named "Dogue".

97.    On or around November 15th, 2023, Demi Moore posted a Dogue cover edit of her dog Pilaf on Instagram. On information and belief, the photo was posted either on a personal account of Demi Moore, such as @demimoore, or on Pilaf's account @pilaf.littlemouse. The photo no longer appears either on her Instagram account or her dog's Instagram account, but it still appears on the designer's account @bootzycouture.

18

Answer and Counterclaims

98.     In response, Olga Portnaya commented on Demi's photo writing "Pilaf, we would love to feature you on the cover of the REAL DOGUE magazine!"

99.     Moore did not respond. However, in August of 2024, Condé Nast launched their first "Dogue" campaign, with dog-centered covers of celebrity dogs, entitled "Dogue Days of Summer." The dog on the first cover was Demi Moore's dog, Pilaf.

100.     In 2025, Condé Nast doubled down on its infringing "Dogue" campaign. In addition to their dog celebrity "Dogue" cover features on social media, Condé Nast also launched a "Dogue Cover Star Competition". The contest, on information and belief, attracted 56,000 applicants who had to download the official Vogue app in order to enter. By adopting the brand "Dogue" for this contest after Tasty Work had developed a successful DOGUE branded contest, through its Coverdogs project, Condé Nast entered Tasty Work's niche directly. Tasty Work has been doing DOGUE "Cover Dog" contests since 2019, and Condé Nast's 2025 decision to do a copycat "Dogue" branded Cover Star Competition created actual confusion. Customers were familiar with Tasty Work's Coverdogs competition and actually confused Condé Nast's copycat competition with Tasty Work's established competition. This confusion arose because Tasty Work had already achieved widespread recognition as the creator of Coverdogs and DOGUE

19

magazine. Tasty Work received emails from people asking about Condé Nast's copycat "Dogue" campaign and "Dogue" cover star competition. For example, asking how to enter, and why some dogs were chosen over others. In addition, when Condé Nast launched its copycat "Dogue" campaign in 2024 and in 2025, many people tagged the Coverdogs page on Instagram, thinking that Condé Nast's campaign belonged to Tasty Work and not realizing that it was a copy of Tasty Work's successful DOGUE campaigns.

101.    On information and belief, at the time that Condé Nast launched its "Dogue Cover Star Competition", it was familiar with Tasty Work's established Coverdogs competition, and deliberately decided to copy that competition.

102.    By the time that Condé Nast launched its copycat "Dogue" campaigns, Tasty Work's DOGUE magazine was already famous, with international recognition, press and acclaim.

103.    On October 2nd, 2023, (almost a year before Condé Nast made any use of the term Dogue in its marketing) Tasty Work's DOGUE parodies were featured on live TV, on WNKY News 40 in a feature of a local dog fashion designer where Tasty Work's magazine was referred to as a "legendary" dog fashion magazine, and parody of Condé Nast's Vogue.

104.    On February 13, 2022, Tasty Work's DOGUE was featured in El Vocero, which is a major daily newspaper in Puerto Rico. The paper featured

20

Answer and Counterclaims

one of Tasty Work's digital DOGUE covers and the photography of a NYC based Puerto Rican dog artist. The paper recognized that Tasty Work's DOGUE magazine was "a play on Vogue, that highlights creativity and beauty of dogs and photography, which are featured in their various editions." The paper also pointed out that Tasty Work's Coverdogs also publishes covers like "National Pawgraphic" and "Spawrts Illustrated."

105.    In 2023, Tasty Work's DOGUE magazine issue #3, published in 2021, a collaboration with a well-known artist Valeria Krasavina, was featured on Bloomberg TV. It was Valeria Krasavina's feature, but Bloomberg chose to show a Tasty Work DOGUE cover on the screen.

106.    On May 3, 2023, DOGUE magazine was also mentioned in the news in the UK in the Metro.co.uk when they featured one of Tasty Work's DOGUE models (a dog), and mentioned that the dog had been featured on the cover of DOGUE, as one of its accomplishments.

107.    On or around August 23, 2024, right after Condé Nast first launched its "Dogue" campaign, Tasty Work's DOGUE magazine and Coverdogs were featured on live TV in Australia, on Weekend Sunrise. The Australian reporter clarified that while Condé Nast had just launched their "Dogue" campaign with celebrity dogs, DOGUE magazine had been operating since 2019, and already had 18 print issues. "There is a whole publication dedicated to our furry friends.

Answer and Counterclaims

DOGUE is the world's first dog fashion magazine and it's taking off worldwide, as well it should." Tasty Work's DOGUE magazine was referred to as "genius" by the Australian reporter.

108.    On information and belief, Condé Nast launched its digital "Dogue" campaign willfully and maliciously and with the intent of taking over Tasty Work's successful idea and of driving Tasty Work out of the market by dominating the public use of the DOGUE mark and creating reverse confusion.

109.    Tasty Work's DOGUE trademark application (originally filed in 2022) was published for opposition by the United States Patent and Trademark Office on or around August 5, 2025.

110.    Condé Nast filed an opposition at the United States Patent and Trademark Office Trademark Trial and Appeal Board (the "TTAB") on or around October 2, 2025. In its opposition, Condé Nast did not—and could not—challenge Tasty Work's status as the senior user of the mark "DOGUE". Instead, Condé Nast claimed that it would be damaged by Tasty Work's registration claiming that registration of the mark DOGUE would give Tasty Work "a prima facie right to use the mark "VOGUE" despite an alleged likelihood of confusion and of dilution. Condé Nast's VOGUE and Tasty Work's DOGUE had co-existed for years with no actual confusion and "DOGUE" is hardly the only mark used in commerce that includes the letters "OGUE", but these facts did not stop Condé Nast from

claiming a likelihood of confusion. Any actual confusion that has arisen in this case arose after Condé Nast decided to copy Tasty Work's DOGUE mark and is a result of Condé Nast's willful copying.

111.    On or around November 7, 2025, Tasty Work moved for leave to file a summary judgment motion in the opposition on the grounds that Tasty Work launched DOGUE in 2019, filed for trademark protection in 2022, and published in the Official Gazette in 2025 after full USPTO review. In contrast, Vogue began using the term "Dogue" in its own dog-themed campaigns only in 2024, five years after Applicant's first use in commerce. These are public facts, documented in USPTO records and they establish that Condé Nast copied Tasty Work's DOGUE idea and is trying to steal Tasty Work's valuable intellectual property by flooding the market with its own later "Dogue" branded copycat product. The Lanham Act protects priority and distinctiveness, not market dominance or procedural gamesmanship. Reverse confusion is a long recognized right in trademark law that prevents large companies from bullying smaller ones by overrunning their intellectual property rights. *See Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1371 (10th Cir. 1977); *Dreamwerks Prod. Grp., Inc. v. SKG Studio,* 142 F.3d 1127, 1130, 46 USPQ2d 1561 (9th Cir. 1998).

Answer and Counterclaims

112.    On or around November 28, 2025, the Interlocutory Attorney at the United States Patent and Trademark Office found that he did not have discretion to consider a summary judgment motion so early in the opposition proceedings and denied leave.

113.    After seeing the arguments that Tasty Work would rely on for summary judgment in front of the TTAB, Condé Nast decided, for tactical reasons, to move the dispute to federal court and, on or around December 5, 2025, Condé Nast filed the Complaint in this action.

114.    On or around December 8, 2025, moved to stay the TTAB proceeding. In its motion, Condé Nast told the USPTO that this litigation will be dispositive of the issues in the trademark opposition, that this District Court has the power to grant Tasty Work the right to register its DOGUE mark, and was better situated than the TTAB to "resolve all issues before the Board and then some".

115.    Tasty Work, wanting a federal registration as soon as possible and being the senior user of the DOGUE mark, opposed Condé Nast's attempt to stay the TTAB proceeding.

116.    On or around January 21, 2026, the TTAB suspended the opposition proceeding pending resolution of Condé Nast's motion. It is unclear whether the TTAB will allow the process to move forward during the pendency of this litigation.

Answer and Counterclaims

117.     On information and belief, Condé Nast, recognizing that Tasty Work is the senior user of the mark, made a deliberate decision to try and delay Tasty Work's registration of its DOGUE mark in the hopes of more easily stealing Tasty Work's idea and taking advantage of the goodwill that Tasty Work has built up in the DOGUE mark through its established use by launching its own campaign.

118.     Condé Nast knows, or should know, that customers who purchase the DOGUE magazine that is published by Tasty Work would not be confused into believing that the magazine was created by, owned by, or affiliated with the VOGUE magazine that is published by Condé Nast.

119.     Condé Nast knows, or should know, that customers who view DOGUE and the other parody works created by Tasty Work and published through its DOGUE and Coverdogs website and social media would not be confused into believing that these parodies are created by, owned by, or affiliated with VOGUE magazine.

120.     Condé Nast knows, or should know, that dilution is not available here because the DOGUE mark is not identical to VOGUE and because VOGUE is a conceptually weak mark in that it refers to "fashions and trends" and is used by Condé Nast for a fashion magazine.

121.    Condé Nast knows, or should know, that it is the junior user and that its "Dogue" campaign is derived from Tasty Work's successful social media campaigns and print magazine, and that its customers are likely to be confused as to whether or not Condé Nast is somehow affiliated with or authorized by Tasty Work, which has been publishing the DOGUE campaigns for 5 years before Condé Nast.

122.    At the time that Condé Nast started using "Dogue" for itself, it knew, or should have known, that Tasty Work's trademark application was pending and that Tasty Work has superior rights to the DOGUE mark in connection with dog fashion media.

## FIRST CAUSE OF ACTION
### False Designation of Origin
### (15 U.S.C. § 1125(a)

123.    The allegations above in Paragraphs 1- 122 are included by reference as if set forth fully herein.

124.    Tasty Work has developed brand recognition, a loyal, national and international audience, and goodwill in its DOGUE fashion media parodies online and social media. Tasty Work also has a print magazine that is distributed through on-line channels and through one newsstand in Los Angeles.

125.   Condé Nast willfully and deliberately adopted the identical "Dogue" mark and created confusingly similar "Dogue" campaigns (including its own "Dogue" covers and a "Dogue" Cover Star contest that was designed in imitation of the "Cover Dog" contest that Coverdogs is known for) knowing that Tasty Work is the senior user of the mark and with the intent of suppressing Tasty Work's successful works and/or of superseding the mark by overwhelming Tasty Work's presence in the market and thereby capturing the "DOGUE" mania audience for itself and profiting from Tasty Work's creative efforts.

126.   In 2024, Condé Nast has created internet and social media content using the "Dogue" term and has created a "Dogue" category on its website for new dog-related content. These infringing uses of the DOGUE mark help drive traffic to the Vogue website. Tasty Work uses both the internet and social media to promote its DOGUE magazine works nationwide and worldwide. As such, the companies are using similar channels.

127.   Tasty Work's own customers were actually confused by Condé Nast's decision to release a "Dogue" brand campaign and congratulated Tasty Work because they believed, based on Vogue's misappropriation of the "Dogue" mark that Tasty Work now had a deal with Vogue.

128.   Condé Nast adopted its "Dogue" mark willfully and maliciously and with the intent to harm Tasty Work in the market.

129.    Tasty Work is the senior user of the DOGUE mark for dog fashion media in commerce and the first to file for trademark registration. Condé Nast's conduct has harmed Tasty Work irreparably by interfering with Tasty Work's ability to reach its audience and potential customers and by creating reverse confusion. Tasty Work's DOGUE magazine is the original, Condé Nast copied Tasty Work's idea and is intentionally trying to create confusion to its own benefit.

130.    If Condé Nast is not stopped, there will be confusion in the marketplace and Tasty Work will be irreparably harmed. Condé Nast's use of "Dogue" is widespread on the internet due to their massive marketing budget and dominance. If they are allowed to continue with their "Dogue" campaigns, it is only a matter of time before Tasty Work's DOGUE magazine is overwhelmed in the market. Therefore, injunctive relief is appropriate.

131.    Condé Nast should disgorge any profits it has made from copying Tasty Work's idea, and should reimburse Tasty Work for the cost of fighting this action and for the cost of corrective advertisement.

**SECOND CAUSE OF ACTION**
**Common Law Trademark Infringement**

132.    The allegations above in Paragraphs 1- 131 are included by reference as if set forth fully herein.

28

Answer and Counterclaims

133.    Tasty Work was the first to use the DOGUE mark in commerce.

134.    Condé Nast willfully and maliciously copied Tasty Work's DOGUE brand with the intent to appropriate Tasty Work's idea and goodwill for itself.

135.    There has been actual confusion among Tasty Work's customers and confusion in the general public is also likely– the public might think that Condé Nast's copycat "Dogue" campaign belongs to or is affiliated with Tasty Work. Tasty Work is the senior user of the mark and the first to file for protection at the United States Patent and Trademark Office and has never authorized Condé Nast to use the "DOGUE" mark.

136.    If Condé Nast is not stopped, there will likely be confusion in the marketplace and Tasty Work will be irreparably harmed by Condé Nast's belated adoption of "Dogue" branding. Therefore, injunctive relief is appropriate.

137.    Condé Nast should disgorge any profits it has made from copying Tasty Work's idea, and should reimburse Tasty Work for the cost of fighting this action and for the cost of corrective advertisement.

## THIRD CAUSE OF ACTION
### Reverse Confusion

138.    The allegations above in Paragraphs 1- 137 are included by reference as if set forth fully herein.

Answer and Counterclaims

139. Tasty Work is the senior user of the DOGUE mark on the internet, on social media, and in print magazines.

140. On information and belief, at the time that Condé Nast began using "Dogue", Condé Nast was fully aware of Tasty Work and of its successful DOGUE works. Condé Nast adopted the DOGUE mark knowing that Tasty Work was the senior user and with the intent to over-run Tasty Work's presence in the market so as to take control of the DOGUE trademark despite Condé Nast's status as a junior user and copier.

141. Condé Nast's attempt to create reverse confusion is unfair competition and Tasty Work is entitled to injunctive relief, to disgorgement of profits, to attorney fees due to willfulness, and to restitution of its costs and of the cost of corrective advertisement.

**FOURTH CAUSE OF ACTION**
**Unfair Competition (Cal. Bus. & Prof. Code § 17200)**

142. The allegations above in Paragraphs 1- 141 are included by reference as if set forth fully herein.

143. Condé Nast has competed unfairly by adopting and promoting "Dogue" as its own brand and creation.

144. Tasty Work has been harmed by that unfair competition.

30

Answer and Counterclaims

145.     Tasty Work is entitled to injunctive relief, to disgorgement of profits, to attorney fees due to willfulness, and to restitution of its costs and of the cost of corrective advertisement.

## FIFTH CAUSE OF ACTION
**(Declaratory Judgment of Registrability and Registration)**

146.     The allegations above in Paragraphs 1- 145 are included by reference as if set forth fully herein.

147.     In the papers that Condé Nast filed to stay the TTAB proceeding, Condé Nast indicated that this Court would resolve the question of whether or not Tasty Work's DOGUE mark was registerable over Condé Nast's VOGUE mark. Oddly, however, Condé Nast has not asked this Court to address that issue.

148.     Tasty Work therefore requests declaratory judgment confirming that (1) Tasty Work is the senior user of the mark DOGUE in United States commerce, (2) Tasty Work is entitled to register its mark, (3) Condé Nast has been aware that Tasty Work considers its use of the term "Dogue" to be trademark infringement and unfair competition since at least October 26, 3025, which is the date that Tasty Work served its proposed summary judgment motion alleging reverse confusion, (4) that Condé Nast is liable for unfair competition and/or trademark infringement damages nationwide starting at the latest from the date that

Answer and Counterclaims

Tasty Work served its proposed summary judgment motion alleging reverse confusion.

**PRAYER FOR RELIEF**

Based on the above, Tasty Work respectfully requests that this Court:

(1)     Find that none of the causes of action asserted by Condé Nast has merit;

(2)     Find that Tasty Work is the senior user of the DOGUE mark;

(3)     Find that the DOGUE mark is registerable to Tasty Work;

(4)     Find that Condé Nast is guilty of unfair competition, trademark infringement and/or reverse confusion infringement;

(5)     Find that Condé Nast's infringement was willful and malicious;

(6)     Order Condé Nast to publicly acknowledge Tasty Work's superior rights and apologize for its own willful infringement;

(7)     Enjoin Condé Nast and any affiliated or related companies from using the DOGUE mark in the United States, including online and on social media,

(8)     Order damages from the date that Condé Nast first became aware of Tasty Work's claim of infringement to the present;

(9)     Treble damages due to willful infringement;

\\
//

Answer and Counterclaims

(10)  Award reasonable attorney fees to Tasty Work; and

(11)  Grant such additional relief as it deems just and proper.

Respectfully Submitted,

Dated: April 8, 2026

/s  *David Alan Makman*
David A. Makman

**JURY DEMAND**

Tasty Work demands a trial by jury in this matter.

Respectfully Submitted,

Dated: April 8, 2026

/s  *David Alan Makman*
David A. Makman

Answer and Counterclaims